IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PARLANT TECHNOLOGY, a Utah Corporation,<br><br>                    Plaintiff,<br><br>v.<br><br>THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK, a New York Corporation<br><br>                    Defendant. | MEMORANDUM DECISION AND ORDER<br><br>DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND<br>GRANTING MOTION TO CHANGE VENUE TO SOUTHERN DISTRICT OF NEW YORK<br><br>Case No. 2:12-cv-417-BCW<br><br>Magistrate Judge Brooke Wells |

The parties have consented to having United States Magistrate Judge Brooke C. Wells conduct all proceedings in this case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[1]  Before the Court is Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, and an Alternative Motion to Change Venue to the Southern District of New York.[2]  For the reasons set forth more fully below, the Court finds Utah and this District Court lacks personal jurisdiction over the Defendant.  However, rather than dismissing the case, the Court Orders the case be transferred to the United States District Court for the Southern District of New York.

---

[1] Docket no. 25; 28 U.S.C. § 636(c); F.R.C.P. 73; DUCivR 72-2(g).

[2] Docket no. 10.

## PROCEDURAL HISTORY

On May 2, 2012, Plaintiff Parlant Technology ("Parlant") filed the Complaint in this case.[3]   On August 31, 2012, in response to the Complaint, Defendant The Board of Education of the City School District of the City of New York ("NYCDOE") filed a Motion to Dismiss for lack of Personal Jurisdiction and Improper Venue and an Alternative Motion to Transfer Venue to the Southern District of New York.[4]   Plaintiff then filed a Motion to Compel Limited Jurisdictional Discovery.[5]

The Court held oral argument on these Motions on February 1, 2013.[6]   On April 8, 2013, the Court issued a Memorandum Decision and Order taking the Motion to Dismiss and Motion to Transfer Venue under advisement and granting Plaintiff's Motion to Compel Limited Jurisdictional Discovery.[7]    In its April 8th Order, the Court found that it was "…not completely satisfied that it ha[d] all of the information needed to make a reasoned decision with regard to jurisdiction[.]"[8]   The parties were given 45 days to engage in jurisdictional discovery and additional time to file supplemental briefs based upon the fruits of that discovery.[9]   The parties then stipulated to extending the time for jurisdictional discovery and the Court resolved a discovery dispute regarding the same.[10]

---

[3] Docket no. 1.  Originally, the Complaint was filed against both the NYCDOE and Wireless Generation, Inc. ("Wireless.") Parlant and Wireless later settled their disputes and Wireless was dismissed from the case.  Docket no. 14.

[4] Docket no. 10.

[5] Docket no. 22.

[6] Docket no. 38.

[7] Docket no. 39.

[8] Id.

[9] Id.

[10] Docket nos. 44, 46, 48, 63.

Supplemental briefs were then submitted regarding the Motion to Dismiss.[11]  On June 26, 2014, the Court heard final oral arguments on the issues related to personal jurisdiction and venue.[12]  At the hearing, Parlant was represented by Mark Bettilyon and Jacob Cheung-Ka Ong. The NYCDOE was represented by Gerald Singleton and Jeffrey Hunt.  At the conclusion of oral argument, the Court took the jurisdictional and venue issues under advisement.[13]  Upon further consideration of the parties' briefs, affidavits, exhibits and case law, the Court believes it is now fully informed.  Therefore, the Motions are now ripe for decision.

## RELEVANT BACKGROUND[14]

Parlant alleges that the NYCDOE has unlawfully appropriated and used its trademark, PARENTLINK®.[15]  Parlant is a Utah-based company that provides products and services to schools and school districts.  Parlant's primary products provide parent notification and school-to-home communication services, including tools for communication between schools and parents regarding grades, attendance, registration and other student data.  In 2002, Parlant received trademark registration and protection for the ParentLink mark from the United States Patent and Trademark office.  Parlant uses the ParentLink mark in connection with its products and services.

Defendant, the NYCDOE is the largest system of public schools in the United States, serving approximately 1.1 million students in over 1,700 schools.[16]  It is a municipal corporation

---

[11] Dockets nos. 49, 50, 56, 64, 65, 69 & 71.

[12] Docket nos.  64, 65, 69, 71 and 75.

[13] Docket no. 75.

[14] The Court recounted the basic facts of the case in its April 8, 2013 Order.  However, the Court will recite some of those facts here along with those facts uncovered during jurisdictional discovery it finds relevant to this Order.

[15] For clarity, the Court will refer to Parlant's trademark as "ParentLink" and the NYCDOE's service as "ARIS Parent Link."

[16] Docket no. 23.

formed under the laws of the State of New York with a limited statutory mandate to operate the

New York City school system.  Its principal place of business is New York City, New York.

The NYCDOE is not registered to do business in Utah.  As a public school system, the

NYCDOE does not sell any products or services.  It does not have any offices, schools, facilities,

students, or administrative staff in the State of Utah nor does it have any bank accounts or lease

and/or own any property in Utah.  The NYCDOE does maintain websites, including the website

used in connection with its service ARIS Parent Link and has produced other interactive tools

such as email and text message alerts that may be accessed from Utah.[17]

In 2006, Parlant contacted the NYCDOE with the intention of selling its products and

services.  According to Parlant's business records, between 2006 and 2009, employees and

agents of Parlant had telephone conversations, in-person meetings in New York City and

exchanged emails with information about Parlant's services with employees and agents of the

NYCDOE.  As a result of these communications and meetings, the NYCDOE agreed to do a

pilot project using Parlant's ParentLink products and entered Parlant as a vendor in its vendor

database.

The NYCDOE then decided not to further develop a business relationship with Parlant

and ultimately never utilized its services.  Therefore, no actual business transaction was ever

conducted between the two entities.  Instead, in 2009, the NYCDOE developed its own student

notification system titled "ARIS Parent Link." An internal NYCDOE memorandum produced

during jurisdictional discovery titled "ARIS PARENT LINK IP ISSUES" dated November 16,

2009, sets forth a rough timeline for the NYCDOE's naming of their product and the apparent

---

[17] Although not entirely clear from oral argument or the briefs, it appears based upon the exhibits provided that parents must have a login and password in order to access the NYCDOE's website.  Thus, not all aspects of ARIS Parent Link are accessible to the public.

discovery in 2009 of Parlant's commercial product, ParentLink.[18]  While it is unclear who

authored this document, it provides in relevant part:

> 5.      Shortly afterward, discovered there was a commercial product "Parent Link" (February)
> 6.      Communicated to Julia Levy that we must ALWAYS refer to the product as "ARIS Parent Link" instead of "Parent Link" because of the commercial product (March)
> 9.      Received cease & desist from Parlant Technology (June 2009)
> 12.     To reduce confusion, team decided to always refer to the product as "ARIS Parent Link" rather than interchangeably as ARIS Parent Link & APL.
>           a.     Ensured that all product training always said "ARIS Parent Link" at all times.
> 13.     Received 2nd cease & desist November 10, 2009[19]

Jurisdictional discovery produced additional facts with regard to the NYCDOE's contacts

with the state of Utah and the use of the ARIS Parent Link website by individuals in Utah.

For example,

> NYCDOE records indicate that at least 99 parents of former students and one current student provided the NYCDOE with an address in Utah, some of whom may have been non-custodial parents of students attending schools in the NYCDOE.  The NYCDOE further stipulates that a non-custodial parent could have accessed the ARIS Parent Link website from Utah while their child was attending an NYCDOE public school.[20]

There have been approximately 44,000 hits on the NYCDOE's website that have

originated in Utah.  The NYCDOE has hired over sixty vendors from Utah for various

services, including a company called TrueNorthLogic, which hosts a portion of the

services available on the ARIS Parent Link site.  From 2007 to present, approximately

$9,745,000 worth of goods and services have been paid by the NYCDOE to Utah based

businesses.   There is also at least some evidence that another Utah-based vendor

---

[18] Exh. 1, docket no. 69.

[19] Id.

[20] The parties stipulated to the facts contained in this paragraph.  See docket no. 63.

employs "distance learning teachers," who may reside in Utah. There is also evidence that NYCDOE teachers may have traveled to Utah for training.   Lastly, the NYCDOE's website allows users from any location to send a message to the Chancellor of the NYCDOE and the website solicits online donations to the New York City schools.

## ANALYSIS

Through lengthy memoranda, exhibits, affidavits and oral argument, the parties have presented numerous facts about the parties' relationship with each other and the NYCDOE's contacts with State of Utah.  However, the central issue remains, whether due process mandates jurisdiction over the NYCDOE in the State of Utah based upon its adoption of and use a name for its website and service that links parents to students in the New York City School District.

### A. Personal Jurisdiction

In its Complaint, Parlant asserts personal jurisdiction is proper over the NYCDOE because

[t]his action arises out of wrongful acts committed by NYCDOE…that, on information and belief, are intentionally targeted at Parlant in the District of Utah ("District") that subject NYCDOE…to personal jurisdiction here on several independent bases, including violation of a trademark holder's trademark rights, and the brunt of the injury inflicted upon the trademark holder, occur where the trademark holder resides, which is in this District.[21]

On information and belief, NYCDOE's ARIS Parent Link allows for remote access where educators, parents and children's guardian's, may access information about their children and those they teach.  On information and belief, this access extends nationwide, including into Utah.[22]

In the 10th Circuit, "[t]he plaintiff bears the burden of establishing personal jurisdiction over the defendant.  Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a

---

[21] Complaint, docket no. 1 at ¶ 7.

[22] Id. at ¶ 10.

prima facie showing."[23]   In determining whether a plaintiff has made a prima facie showing that

establishes jurisdiction, all factual disputes are decided in favor of the plaintiff.[24]

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction

over persons."[25]   Utah has authorized its courts to exercise jurisdiction to the extent permitted by

the Fourteenth Amendment's Due Process Clause.[26]   Therefore, "[t]he resulting question is

whether service of process would have deprived [the NYCDOE] of due process."[27]   Generally,

to satisfy the constitutional requirement of due process, the defendant must have such "minimum

contacts" with the forum state such "that he should reasonably anticipate being haled into court

there."[28]   In addition to determining whether the Defendant has minimum contacts with the state

of Utah, the Court must also determine whether personal jurisdiction is reasonable in light of the

circumstances surrounding the case.   In other words, exercising jurisdiction must not offend

traditional notions of "fair play and substantial justice."[29]

"Personal jurisdiction can be general or specific."[30]   A forum state's courts may exercise

"general jurisdiction" over a defendant "if the defendant has 'continuous and systematic general

business contacts' with the forum state "as to render them essentially at home in the forum

---

[23] Farr West Capital, Inc. v. Towne, 46 F.3d 1071 (10th Cir. 1995)(internal quotations and citations omitted).

[24] Id.

[25] Daimler AG v. Bauman, 134 S. Ct. 746, 753 (2014).

[26] See Utah Code Ann. § 78B-2-201(3)(2014)(stating that the Utah long-arm statute "…should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution.") "Utah's long-arm statute confers the maximum jurisdiction allowed by due process of law, therefore the first, statutory, inquiry effectively collapses into the second, constitutional analysis."   Sampson v. Delta Air Lines, Inc., et al., No. 2:12-cv-244-TS-EJF, 2013 WL 6409865 at * 3 (D. Utah Dec. 9, 2013)(unpublished)(internal quotations and citations omitted).

[27] Rockwood Select Asset Fund XI(6)-1, LLC v. Devine, Milliment & Branch, 750 F.3d 1178,  1179 (10th Cir. 2014)(hereinafter simply referred to as "Rockwood").

[28] World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980).

[29] Burger King v. Rudzewicz, 471 U.S. 462, 472-473 (1985).

[30] Rockwood, at 1179.

state."[31] In the alternative, the court may exercise "specific jurisdiction" over a defendant if that defendant has "purposely directed" its activities at the state's residents, and the plaintiff's claims arise out of, or result from actions by the defendant that create a substantial connection to the forum state.[32]

While at times unclear, the Court believes that throughout this litigation the parties have put forth arguments related to both general and specific jurisdiction.  Therefore, the Court will address each in turn.  In so doing, the Court has considered the affidavits and exhibits, resolved any actually disputed facts in favor of Plaintiff, and makes the following findings regarding personal jurisdiction.

   **a.  General Jurisdiction**

In Parlant's Reply Memorandum dated April 7, 2014, it asserts "Parlant is not asserting general jurisdiction." However, the Court agrees with the arguments made by the NYCDOE that many of Parlant's arguments with regard to jurisdiction are not suit related but arise from other contacts the NYCDOE has had with Utah.  These contacts, which have nothing to do with this lawsuit, raise the possibility that Utah may have general jurisdiction over the NYCDOE.  Therefore, the Court will briefly address whether Utah has general jurisdiction over the NYCDOE.

In its recent decision, <u>Daimler AG v. Bauman,</u>[33]  the U.S. Supreme Court clarified the parameters of general jurisdiction.  The Court, instructed by prior case law, stated "a court may assert jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive

---

[31] <u>Daimler AG</u>, at 754.

[32] <u>Burger King</u> at 472-473.

[33] 134 S.Ct. 746 (2014).

'as to render [it] essentially at home in the forum State.'"[34]   Here, like Daimler AG, the Court concludes that the NYCDOE which is incorporated in New York, and has its principal place of business and statutory mandate to operate schools in New York City is not "at home" in Utah. The NYCDOE is not authorized to do business in Utah and does not have any offices, schools, facilities, students, or administrative staff in the State of Utah.  The NYCDOE does not have any bank accounts or lease and/or own any property in Utah.  Further, other contacts the NYCDOE may have with Utah such as sending teachers to Utah for training and purchasing products unrelated to ARIS Parent Link from other Utah businesses do not make the NYCDOE amenable to suit here.[35] Therefore, Utah does not have general jurisdiction over the NYCDOE.

### b.  **Specific Jurisdiction**

In the U.S. Supreme Court's authoritative and highly cited case, International Shoe Co. v Washington,[36] the Court recognized that in addition to general jurisdiction,

> the commission of some single or occasional acts of the corporate agent in a state may sometimes be enough to subject the corporation to jurisdiction in that State's tribunal with respect to suits relating to that in-state activity.  Thus, adjudicatory authority of this order, in which the suit arises out of or relates to the defendant's contact with the forum is today called specific jurisdiction.[37]

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum and the litigation.'"[38]

---

[34] Id. at 751 (quoting Goodyear Dunlop Tires Operations, S.A. v Brown, 564 U.S. __, 131 S.Ct. 2846, 180 L.Ed.2d 796(2011); 760 ("With respect to a corporation, the place of incorporation and principal place of business are paradigm basses for general jurisdiction.")

[35] See Helicopteros v. Nacionales de Columbia, S.A. v Hall, 466 U.S. 408, 418 (1984)(holding "[m]ere purchases even if occurring at regular intervals are not enough to warrant a state's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions.  Nor can we conclude that the fact that [personnel was sent] into Texas for training...in any way enhanced the nature of [Defendant's] contacts with Texas.")

[36] 326 U.S. 310 (1945).

[37] Daimler AG, at 754 (internal citations and quotations omitted).

[38] Walden v. Fiore, 134 S.Ct. 1115, 1121 (2014)(quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984)(quoting Shaffer v. Heitner, 433 U.S. 186 (1977)).

Further, "for a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."[39] In the tort context, the 10th Circuit has stated "we often ask whether the nonresident defendant 'purposefully directed' its activities at the forum state..."[40]

In the April 8th Order allowing jurisdictional discovery, the Court advised "issues that should be explored through this limited discovery are:  other relevant contacts with the State of Utah that the NYCDOE may have (including contracts and other business relationships it has with entities and people in Utah) and a focus on the elements of the 'effects test.'"[41] The Court specifically ordered that the parties focus their inquiry in these two areas because the Court wanted to more information on the NYCDOE's contacts with the State of Utah and also because at the time, before the United States Supreme Court's issued its decision in Walden v. Fiore, (which was issued after the Motion to Dismiss was filed) the Court was wrestling with the proper application of "the effects test."

"The effects test" originated from the United States Supreme case, Calder v. Jones[42] and is one method courts use to determine whether a party "purposefully directed his or her conduct at the forum state."[43]  In Calder, actress Shirley Jones brought suit in California against the National Enquirer magazine, the Enquirer's local distributor, and the writer and editor of an allegedly libelous article published in the Enquirer.[44]  The writer and the editor challenged California's assertion of personal jurisdiction over them because the article was written and

---

[39] Id.

[40] Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1071.

[41] Docket no. 39.

[42] 465 U.S. 783 (1984).

[43] Id. at 785-786.

[44] Id.

edited in Florida and although the *Enquirer* was distributed nationally, they themselves had very few contacts with California.[45]  The Court held that specific jurisdiction in California was appropriate.[46]  The Court reasoned that the defendants had not engaged in "mere untargeted negligence.  Rather, their intentional, and allegedly tortious action, were expressly aimed at California."[47]  Thus,

> [d]istilling Calder to its essence, we thus understand the Court to have found purposeful direction there because of the presence of (a) an intentional action (writing, editing, and publishing the article), that was (b) expressly aimed at the forum state (the article was about a California resident and her activities in California; likewise it was drawn from California sources and widely distributed in that state), with (c) knowledge that the brunt of the injury would be felt in the forum state (defendants knew Ms. Jones was in California and her career revolved around the entertainment industry there).[48]

In Walden v. Fiore, the Supreme Court clarified "...Calder made clear that mere injury to a forum resident is not a sufficient connection to the forum.[49]" "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."[50]

---

[45] Id.

[46] Id. at 791.

[47] Id. at 789.

[48] Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1072 (10th Cir. 2008).

[49] Walden at 1125.

[50] Id.; see also Dudnikov v. Chalk & Vermillion Fine Arts, Inc., at 1074-1082 (holding personal jurisdiction to be proper in Colorado where a foreign copyright holder sent a letter to eBay in California seeking to immediately halt Plaintiff's auction in Colorado.  In so holding, the 10th Circuit analyzed Calder and stated the letter only traveled to CA, but "it can be fairly characterized as an intended means to the further intended end of cancelling Plaintiffs' auction in Colorado." Further, eBay's cancelling of Plaintiffs' auction had adverse consequences for Plaintiffs' business and future dealings with the auction site.  Thus, the foreign corporation's intended result to halt Plaintiff's auction in Colorado was enough to connect the corporation to Colorado in a meaningful way because the foreign corporation's intent was clear. In the instant case, even construing the evidence in Parlant's favor, no evidence has been presented that supports as strong of a connection to Utah nor clear intention to harm the State of Utah as in Duknikov and Calder.)

The facts of Walden are instructive to the instant case.  In Walden, a Georgia police officer was working as a deputized Drug Enforcement Administration agent at a Georgia airport when he conducted a search and seized a large amount of cash from two travelers en route to Nevada, where they lived.[51]   The officer later helped drafted an affidavit concerning probable cause for the seizure which was forwarded to the U.S. Attorney's Office in Georgia.[52]  The plaintiffs characterized this affidavit as false and misleading.[53]  In the end, the money was returned to plaintiffs.[54]  Plaintiffs then filed suit in Nevada against the officer seeking money damages.

The U.S. Supreme Court held that Nevada did not have personal jurisdiction over the officer.  The Court reasoned:

> Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he alleged directed his conduct at plaintiffs whom he knew had Nevada connections.  Such reasoning improperly attributes plaintiff's forum connections to the defendant and…obscures the reality that none of the petitioner's challenged conduct had anything to do with Nevada itself.[55]

The Court further reasoned, "[u]nlike the broad publication of the forum-focused story in Calder, the effects of petitioner's conduct on respondents are not connected to the forum State in a way that makes those effects a proper basis for jurisdiction."[56]  After Walden, the 10th Circuit asserted "Walden teaches that personal jurisdiction cannot be based on interaction with a plaintiff known to bear a strong connection to the forum state."[57]

---

[51] Id. at 1119.

[52] Id. at 1119-1120.

[53] Id.

[54] Id.

[55] Id. at 1125.

[56] Id.

[57] Rockwood, at 1180.

Like, Walden, the NYCDOE's relevant conduct (creation of a parent to student notification system, which uses the words "Parent Link") occurred entirely in New York. The mere fact that this conduct may have affected Parlant because it is based in Utah does not suffice to authorize jurisdiction.  The Court finds the NYCDOE engaged in no purposeful activity with regard to Parlant's trademark claims that was either purposefully directed at Utah or that connected the NYCDOE to Utah in a meaningful way.  For example, Parlant's own internal memorandum dated November 16, 2009 indicates that the name was adopted without direct knowledge by those involved (at least with the memorandum) that there was another commercial product in the marketplace with a similar name.

Importantly, any relationship that occurred between the parties, including the NYCDOE's assertion that it would do a pilot-project using Parlant's services arose from Parlant's own unilateral conduct.  It was Parlant who reached out to the NYCDOE by initiating phone calls, emails and traveling to New York to solicit its product.   In contrast to Calder, Parlant, by being based in Utah would have experienced the same harm had the alleged infringement occurred in any other state in the union.  Therefore, similar to Walden "the effects of [the NYCDOE]'s conduct on [Parlant] are not connected to the forum State in a way that makes those effects a proper basis for jurisdiction."[58]

The language contained in the Complaint in this case also supports the conclusion that any injury caused by the NYCDOE by its use of the words "Parent Link" was aimed at Parlant, who happens to be based in Utah and not the State of Utah itself.  The Complaint in relevant part

---

[58] Id.

states:  "this action arises out of wrongful acts committed by NYCDOE…that, on information and belief, are intentionally targeted *at Parlant* in the District of Utah."[59]

Moreover, the Court does not agree with Parlant's assertion that personal jurisdiction in Utah is proper because consumers may have experienced "initial interest confusion"[60] between Parlant's ParentLink product and the NYCDOE's ARIS Parent Link.  At the June 26th hearing, counsel for Parlant stated "the public at large has been confused by the activities of the defendant" and "there have been over 44,000 page hits in a...several year period of time in the State of Utah."[61]  As the Court stated at the hearing, these arguments made by Parlant go to the merits of the litigation—something the Court is not allowed to weigh at this stage in the litigation.  These arguments in the Court's view, are not relevant to whether due process mandates that Utah have jurisdiction over the NYCDOE.[62]

The Court further finds that the NYCDOE's ARIS Parent Link website, which Parlant has demonstrated is accessible to and has been accessed by Utahns, some of whom may be custodial parents of New York City school children, is not specifically targeted or purposefully directed at people or organizations located in Utah.  Rather, the website as the NYCDOE asserts, is aimed at parents of New York City public school students—who are mostly located in New

---

[59] Complaint at ¶ 7 (emphasis added).

[60] Initial Interest Confusion "involve[s] situations in which one person uses another source-indicating device to create initial consumer interest in its own product or service.  While any confusion about whose good or service is being sold is dispelled before the sale, this use capitalizes on the mark owner's goodwill. Courts consider pre-sale confusion actionable when a consumer's response to the defendant's use results from the consumer erroneously believing it is the mark owner who is using the mark."  CRAIG ALLAN NARD, DAVID W. BARNES & MICHAEL J. MADISON, THE LAW OF INTELLECTUAL PROPERTY 173 (2006).

[61] Docket no. 76 at 14:3-4; 11-13.

[62] Counsel for Parlant's arguments later in the hearing confirm that any arguments related to "initial interest confusion" go to the merits of the case rather than to jurisdiction.  Mr. Bettilyon:  "So any consumer who sees Parent Link on their website and believes:  "Parent Link. I know who they are.  That's that Utah-based company.  I really like them.  I like their software." That is an act of confusion.  That's trademark infringement.  And, you know, the case law says that if I can prove as little as 15 or 18 percent of the population is confused when they see that name and they think it comes from the other guy, then I have a claim for trademark infringement."  Docket no. 74 at 16:5-14.

York.[63] Similarly, the ability of a web user to sign up for email and text message updates from the NYCDOE in Utah and the NYCDOE's solicitation of donations through its website and ability to connect with the Chancellor are not sufficiently related to the NYCDOE's trademark claims for jurisdictional purposes.

The additional contacts with Utah that Parlant cites, such as the hiring and payment of sixty different Utah vendors and the NYCDOE's hiring of a Utah consultant and distance learning teachers who reside in Utah are the type of 'random, fortuitous or attenuated contacts' that are irrelevant to specific jurisdictional analysis.[64]   Moreover, even if the NYCDOE did adopt the ParentLink mark knowing full well that Parlant had a similar trademark, "personal jurisdiction is not properly based on interaction with a plaintiff known to bear a strong connection to the forum state."[65]

Thus, the Court finds Parlant has failed to meet their burden in making a prima facie showing of specific jurisdiction over the NYCDOE.

**B.  <u>Venue Transfer</u>**

Having found Utah does not have personal jurisdiction over the NYCDOE, the Court must now turn to Defendant's Alternative Motion to Transfer Venue to the United States District Court for the Southern District of New York.

At the outset the Court notes that at the oral argument in June 2014, the Court asked counsel Parlant about the ramifications of a transfer of venue versus dismissal of the case.  In response, counsel for the Parlant replied, "…just off the cuff, I believe we'd rather have a

---

[63] Docket no. 71 at p. 4.

[64] "Our 'minimum contacts' analysis looks to the defendant's contacts with the forum itself, not the defendant's contacts with people who reside there." <u>Walden</u>, at 1123.

[65] 750 F.3d 1178, 1180 (10th Cir. 2014).

transfer.  I mean, we're not going to give up.  We're going to keep going on this case."[66]  When pressed further about potential ramifications of transfer, counsel for Parlant stated:  "I worry maybe about some kind of statute of limitations problem that I might have if you dismissed, but that would be the only thing that comes to mind."[67]

A district court may transfer any civil action to any other district or division where the case might have been brought if the change of venue is more convenient for parties and witness, [and] in the interest of justice.[68]  Although this statute allows for a change of venue, the requesting party "bears the burden of establishing that the existing forum is inconvenient."[69] "Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue."[70]

Although "[t]he circumstances of each particular case must be examined by the trial judge in the exercise of his [or her] discretionary power under section 1404(a) to order a transfer,"[71] the Court must make two determinations.  First, the Court must determine whether this action could have been brought in the proposed transferee district.  Here, there is no dispute that Plaintiff could have instigated this action in the Southern District of New York.  Therefore, this first element has been met.

Second, the Court must consider the statutory mandate of whether the convenience of the parties and witnesses and the interests of justice are served by a transfer of this matter to another forum.  In making this determination, courts should consider the following factors:

---

[66] Docket no. 76, at 55:5-7.

[67] Id. at 55:12-15.

[68] 28 U.S.C. § 1404(a).

[69] Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1515 (10th Cir. 1991)(internal citations omitted).

[70] Scheidt v. Klein, 956 F.2d 963, 966 (10th Cir. 1992).

[71] Texas Gulf Sulpher Co. v. Ritter, 371 F.2d 145, 147 (10th Cir. 1967).

the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of question arising in the area of conflicts of law; the advantage of having a local court determine questions of local law; and all other considerations of a practical nature that make a trial easy, expeditious and economical.[72]

Not all of these factors are relevant in the instant case, but the Court will discuss those factors that are present.

### 1. Plaintiff's Choice of Forum

In the 10th Circuit, "[u]nless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed."[73]   Thus, great weight is given to the Plaintiff's choice of forum.[74]

Here, Parlant is a Utah corporation and its headquarters and offices are located in Utah. Therefore, on that basis, this factor weighs in favor of Parlant.

### 2. Witnesses, Proof & Costs

In this case, because Parlant has alleged that the NYCDOE has infringed upon its ParentLink trademark, a majority of the witnesses and evidence regarding such potential infringement will be based in New York.  According to the NYCDOE, all relevant witnesses concerning the NYCDOE's adoption and use of the name ARIS Parent Link are located in New York.  On the other hand, Parlant argues that the NYCDOE is in a better financial position than

---

[72] Id.

[73] KCJ Corp. v. Kinetic Concepts, Inc., 18 F.Supp. 1212, 1214 (D. Kan. 1998); see Texas Gulf Sulpher Co. v. Ritter, 371 F.2d 145, 147 (10th Cir. 1967)("The burden of establishing that the suit should be transferred is upon the movant and unless the evidence and circumstances of the case are strongly in favor of the transfer the plaintiff's choice of forum should not be disturbed.")

[74] KCJ Corp. at 1214.

Parlant and therefore is able to shoulder the burden of "litigating on the road" more readily than Parlant.

True, there will be some witnesses supporting Parlant's claims that may not be based in New York and there will be additional expense to Parlant for their transportation and attorneys' fees for hearings and/or trial.  The Court has considered arguments on both sides but for reasons of convenience, finds that in this case because the majority of the evidence that will need to be obtained is housed in New York, this factor on balance weighs in favor of transferring venue to New York.

    3.  **Congested Dockets**

"When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge and average weighted filings per judge."[75]  According to the Federal Court Management Statistics released in June 2014, there is a slight difference in these numbers between the District of Utah and the Southern District of New York.[76]  The slight difference weighs in favor of transfer.

|  | <u>Utah</u> | <u>Southern District of New York</u> |
|---|---|---|
| **Median Time from Filing to Disposition (Months)** | 11.1 | 8.1 |
| **Median Time from Filing to Trial** | 38.0 | 32.1 |
| **Pending Cases Per Judge** | 420 | 662 |

---

[75] <u>Employers Mut. Cas. Co. v. Bartile Roofs</u>, 618 F.3d 1153, 1169 (10th Cir. 2010)(internal citations omitted).

[76] <u>Federal Court Management Statistics 2014</u>, UNITED STATES COURTS, http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-june-2014.aspx (accessed by selecting the desired jurisdiction from the drop-down list).

| Average Weighted filings per Judge | 444 | 479 |
|---|---|---|

Although there are more pending cases and average weighted filings per judge in the Southern District of New York, based upon these statistics, the case may be resolved quicker in the Southern District of New York.  Thus, this factor weighs in favor of transfer.

### 4. Conflict of Laws & Advantage of Having Local Court Determine Questions of Local Law

The conflict-of-laws factor and advantage of a local court may have in determining questions of local law cuts both ways with regard to transfer.  In a diversity action, courts prefer the action to be adjudicated by a court sitting in the state that provides the governing substantive law.[77]  However, this factor receives less weight in this case because a majority of the claims are for breaches of federal and common law.  There is little question of conflict of laws because they are not based in state law.  The Complaint contains one claim for relief based on Utah law for Unfair Competition.  However, no evidence has been put forth that a Court in New York is ill-equipped to handle this claim, interpret the law accordingly or that New York may not have a similar law in which to bring this cause of action under.   Thus, these factors are neutral with regard to transfer of venue.

### 5. Remaining Factors and Other Considerations

The remaining factors—questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; are not necessarily relevant here.  A judgment from Utah will be just as enforceable as one from New York.  There are no identified advantages or obstacles to a fair trial in Utah versus New York.

---

[77] Employers Mutual Cas. Co., at 1169 (internal citations omitted).

The Court is cognizant that the Plaintiff's choice of forum is a very important consideration.  However, the Court also acknowledges Parlant's response at oral argument that transfer is more favorable than outright dismissal.  Therefore, because Utah does not have personal jurisdiction over the NYCDOE and based on the factors with regard to transfer set forth above, the Court finds it is more convenient and in the interest of justice that this case proceed in the Southern District of New York where a majority of the witnesses are located and where the alleged infringing conduct occurred.[78]

Certainly the Court's ruling this is not Parlant's desired result, and the Court has considered the added financial hardship this decision will impose on Parlant.  However, on balance, it is the Court's view that New York provides the most efficient and convenient forum for this case to be resolved having previously found that Utah does not have personal jurisdiction over the NYCDOE.

## CONCLUSION & ORDER

For the foregoing reasons IT IS HEREBY ORDERED that:

1) Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue is DENIED.

2) Defendant's Alternative Motion to Transfer Venue to the United States District Court for the Southern District of New York is GRANTED.

3) The Clerk of Court is directed to transfer the case to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1391, 1404 and 1631.

4) The Clerk of Court is directed to close this case in the District of Utah.

---

[78] In addition, even if the Court did have specific personal jurisdiction, which the Court has found it does not, venue is not proper here.  Venue can be proper in three places:  where the defendant resides (New York); where "a substantial part of the events or omissions giving rise to the claim occurred (New York); or in any judicial district in which personal jurisdiction exists over any defendant. (not Utah).  See 28 U.S.C. § 1391(b).

DATED this 29 September 2014.

_Brooke C. Wells_
Brooke C. Wells
United States Magistrate Judge